IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| MACON COUNTY INVESTMENTS, INC., *et al.*, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) CASE NO. 3:06-CV-224-WKW ) |
| DAVID WARREN, | ) ) ) |
| Defendant. | ) |

### MEMORANDUM OPINION AND ORDER

This case is before the Court on the Motion to Intervene (Doc. # 24) filed by the Tuskegee Macon County YMCA; the Little Texas Volunteer Fire Department, Inc.; the Macon County Healthcare Authority; the Macon County RSVP Council, Inc.; Macon Russell Community Action Agency, Inc.; and the City of Tuskegee, Alabama (hereinafter "Licensed Charities" or "proposed intervenors"). For the reasons given below, the Motion to Intervene (Doc. # 24) will be DENIED.

### I. FACTUAL AND PROCEDURAL BACKGROUND

The Court reiterates the factual allegations in the pleadings. The operation of bingo gaming by nonprofit organizations is legal in Macon County, Alabama. Ala. Const. Amend. No. 744. The Sheriff is responsible for promulgating the "rules and regulations for the licensing and operation of bingo games within the county." *Id.* The Sheriff of Macon County, Alabama ("Sheriff Warren"), promulgated "Rules and Regulations for the Licensing and Operation of Bingo Games in Macon County" in December 2003. (Am. Compl. Ex. 1.) Under the December 2003 rules, any non-profit organization could make an application for a Class B Bingo license so long as the location of the facility, including the land, building, and improvements, was valued at $5,000,000 or greater. (*Id.*) According to the Amended Complaint, the Sheriff has authorized one Class B Bingo facility, which

is currently operating in Macon County.  (Am. Compl. ¶ 9.)  It is alleged that Sheriff Warren has issued fifty-nine Class B licenses in Macon County to the original and sole facility under the December 2003 rules.  (*Id*. ¶ 14.)

On June 2, 2004, Sheriff Warren promulgated the "First Amended and Restated Rules and Regulations for the Licensing and Operation of Bingo Games in Macon County, Alabama."  (Am. Compl. Ex. 2.)  Under the June 2004 rules, a qualified bingo location must have been valued at $15,000,000 or greater, and bingo operations would not be authorized unless a minimum of fifteen non-profit organizations submit an application.  (*Id*.)  According to the allegations of the Amended Complaint, the Sheriff did not issue any Class B Bingo licenses nor did he authorize any facilities under the June 2004 rules.  (Am. Compl. ¶ 12.)

On January 1, 1005, Sheriff Warren promulgated the "Second Amended and Restated Rules and Regulations for the Licensing and Operation of Bingo Games in Macon County, Alabama." (Am. Compl. Ex. 3.)  The January 2005 rules state that at no time shall there be more than sixty Class B Licenses in Macon County, Alabama.  (*Id*.).  The plaintiffs allege that no additional Class B Bingo licenses were issued, and no facilities were authorized under these rules.  (Am. Compl. ¶ 14.)

Reach One, Teach One of America, Inc. ("Reach One"), is a non-profit, federal tax-exempt organization incorporated under the laws of the State of Alabama and is doing business in Macon County as a public service organization.  As allowed under Amendment 744,[1] Reach One contracted

---

[1] Amendment 744 provides, in relevant part:

> (4) A nonprofit organization may enter into a contract with any individual, firm, association, or corporation to have the individual or entity operate bingo games or concessions on behalf of the nonprofit organization. A nonprofit organization may pay consulting fees to any individual or entity for any services performed in relation to the operation or conduct of a bingo game.

2

with Macon County Investments, Inc. ("Investments")[2], a real estate development company, to operate its proposed bingo facility.  On July 25, 2005, Reach One and Investments applied for a Class B Bingo license in Macon County. It is alleged that Sheriff Warren made verbal assurances that  Reach One's application would be granted.  Based on the verbal assurances, Investments purchased land for the facility, began its construction, and negotiated financing to purchase games for the operation of the facility.  However, the license has not been issued.

On March 9, 2006, Plaintiffs Investments and Reach One commenced this action alleging that Sheriff Warren denied the plaintiffs the right to operate a Class B Bingo facility in Macon County as allowed by Amendment 744 to the Alabama Constitution.  Thus, the plaintiffs claim that Sheriff Warren denied them equal protection under the law in violation of the Fourteenth Amendment, for which the plaintiffs seek injunctive and declaratory relief.

After early motions were resolved and the plaintiffs filed an amended complaint,[3] the Licensed Charities filed a motion to intervene as defendants on July 14, 2006.  The Licensed Charities are non-profit organizations that hold current Class B Bingo licenses for the operation of

---

> (5) A nonprofit organization may lend its name or allow its identity to be used by another person or entity in the operating or advertising of a bingo game in which the nonprofit organization is not directly and solely operating the bingo game.

Ala. Const. Amend. No. 744.

[2]  In previous orders, the Court has referred to Macon County Investments, Inc., as "MCII."  To avoid confusion between "MCI" and "MCII," the Court has elected to henceforth refer to this plaintiff as "Investments."

[3]  By Order dated June 26, 2006, the Court resolved the plaintiffs' application for preliminary injunction and expedited hearing and motion for early discovery.  Additionally, the Court denied in part and granted in part the defendant's motion to dismiss, allowing the plaintiffs to amend the complaint for the purpose of establishing Investments' standing.  Plaintiffs then filed an amended complaint on June 28, 2006.  The issue of whether Investments has standing is before the Court on the defendant's Motion to Dismiss First Amended Complaint (Doc. # 26), which will be addressed by separate order.

bingo games in Macon County. Sheriff Warren issued these licenses. The Licensed Charities seek intervention of right and permissive intervention. The plaintiffs oppose the motion to intervene.

## II. STANDARD

Intervention is governed by Rule 24 of the Federal Rules of Civil Procedure. The Rule provides for intervention of right, where intervention is mandatory if a proposed intervenor meets certain criteria:

> **(a) Intervention of Right.** Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed. R. Civ. P. 24(a). Thus, a proposed intervenor must show: (1) that the intervention application is timely; (2) that an interest exists relating to the property or transaction which is the subject of the action; (3) that disposition of the action, as a practical matter, may impede or impair the ability to protect that interest; and (4) the existing parties to the lawsuit inadequately represent the interests. *Chiles v. Thornburgh,* 865 F.2d 1197, 1213 (11th Cir. 1989). While a district court must allow intervention if each of the four requirements is established, the absence of any one criterion dooms a motion to intervene of right. *See id.*

Rule 24 also provides for permissive intervention:

> **(b) Permissive Intervention.** Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal or state governmental officer or agency or upon any regulation, order, requirement, or agreement issued or made pursuant to the statute or executive order, the officer or

4

>agency upon timely application may be permitted to intervene in the action. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Fed. R. Civ. P. 24(b). "Permissive intervention under Fed. R. Civ. P. 24(b) is appropriate where a party's claim or defense and the main action have a question of law or fact in common and the intervention will not unduly prejudice or delay the adjudication of the rights of the original parties." *Mt. Hawley Ins. Co. v. Sandy Lake Prop., Inc.*, 425 F.3d 1308, 1312 (11th Cir. 2005) (quoting *Georgia v. United States Army Corps of Eng'rs*, 302 F.3d 1242, 1250 (11th Cir. 2002)). A district court is vested with broad discretion to decide a motion for permissive intervention. *United States v. Dallas County Comm'n,* 850 F.2d 1433, 1443 (11th Cir. 1988); *Sellers v. United States*, 709 F.2d 1469, 1471 (11th Cir. 1983).

### III.  DISCUSSION

**A.**  *Intervention of Right*

The Licensed Charities assert that they are entitled to intervention of right. Plaintiffs oppose the intervention because the proposed intervenors do not meet Rule 24(a)'s requirements. The Licensed Charities' arguments are not well taken.

**1.  Interest**

The proposed intervenors are required to show that they have an interest related to the property or transaction that is the subject of the lawsuit. *Chiles*, 865 F.2d at 1213. They must have a direct, substantial, and legally protectable interest that "the *substantive* law recognizes as belonging to or being owned by the applicant." *Mt. Hawley Ins. Co.*, 425 F.3d at 1311 (citing *United States v. S. Fla. Water Mgmt. Dist.*, 922 F.2d 704, 710 (11th Cir. 1991)). "[A] legally protectable interest is an interest that derives from a legal right" and that "'is something more than an economic

5

interest.'" *Id.* Moreover, the alleged interest cannot be speculative. *See Laube v. Campbell*, 215 F.R.D. 655, 657 (M.D. Ala. 2003) ("Interests that are contingent upon some future events and which are purely a matter of speculation are not the kind of protectable interest necessary to support intervention as of right." (citations and internal quotation marks omitted)).

Because they hold Class B Bingo licenses, the Licensed Charities claim "an interest relating to the subject matter of this action." (Mot. ¶ 7.) Specifically, they assert that "[a]s legal license holders for Class B bingo games, the Licensed Charities are entitled to participate in the disposition of the Sheriff's substantive, administrative policies that directly affect their legal status." (*Id*. ¶ 8.) They cite *South Florida Water Management District* for support of this proposition.[4] However, the Court agrees with the plaintiffs that *South Florida* is inapposite.

In *South Florida*, the intervenors had a legally protectable right because the statute in question provided the intervenors with the right to participate in the development of the plan in question. *South Florida*, 922 F.2d at 708. The right was also direct because it was the right to participate in the setting of numeric standards, and was substantial because it was the intervenors' only means of protecting their right to the Water District's services. *Id.* In the instant case, the law that authorizes bingo in Macon County expressly provides that the sheriff "shall promulgate rules and regulations for the licensing and operation of bingo games within the county." Ala. Const. Amend. No. 744. The Alabama law does not accord any other person or entity the right to participate in the development of those rules and regulations as was the case in *South Florida*. The Licensed Charities have no substantively legal, legislatively granted right to participate in setting the rules for issuance of licenses or standards for the conduct of the games. That is the sole purview of

---

[4] *United States v. S. Fla. Water Mgmt. Dist.*, 922 F.2d 704 (11th Cir. 1991).

the Sheriff. Thus, the Licensed Charities have "no legally protectable right to participate in the administrative development of the standards themselves." *South Florida*, 922 F.2d. at 709.

Contrary to the Interveners' assertion, the possession of a license does not provide a substantive, legally protectable right to participate in rule making, or serve as a basis for intervention as of right. Alabama law is clear that licenses of this nature confer a privilege, not a substantive legal right as required to support intervention as of right. *See Potts v. Bennett*, 487 So.2d 919, 923 (Ala. Civ. App. 1985) (holding that a liquor license does not confer a property right or a vested interest) (citation omitted).

At most, the Licensed Charities have an economic interest in continuing to operate bingo games and in blocking the competition that a new facility and new licenses would bring. However, a legal interest, not an economic one, is necessary to support intervention. *See South Florida*, 922 F.2d at 710; *Mt. Hawley*, 425 F.3d at 311. Moreover, such alleged economic interest is speculative. Even if the plaintiffs were to achieve the relief they seek, *i.e.*, a declaration that the amended rules are unconstitutional, there is no certainty it would have any effect on the economic interests of the Licensed Charities.[5] *See Laube*, 215 F.R.D. at 658-59. Accordingly, the Court finds that, having nothing other than an economic interest in the issues at bar, and a speculative one at that, the Licensed Charities have not asserted an interest in the transaction that is the subject of this lawsuit such that would entitle them to intervention of right.

---

[5] The parties do not explicitly state, so the Court presumes, that the Licensed Charities were granted Class B bingo licenses under Sheriff Warren's original rules. Because the plaintiffs do not challenge the original rules, only the amended versions thereof, this litigation poses no risk to the bingo licenses held by the Licensed Charities.

### 2.     Impeded or Impaired Interest

The proposed intervenors are required to show that the disposition of this action, as a practical matter, may impede or impair the ability to protect their alleged interest in this case. *See Chiles*, 865 F.2d at 1213. This requirement is "intimately related" to the alleged interest sought to be protected by the proposed intervenors. *Id.* The Licensed Charities do not even attempt to allege how the disposition of this action may impede their ability to protect their claimed interest. Without having established a direct, substantial, and legally protectable interest in this litigation, the Licensed Charities' claim of impairment must fail.

### 3.     Inadequate Representation

The proposed intervenors must show that the existing parties to the lawsuit inadequately represent their interests. Adequate representation is presumed where an existing party seeks the same objectives as the proposed intervenors. *Stone v. First Union Corp.*, 371 F.3d 1305, 1311 (11th Cir. 2004) (citing *Clark v. Putnam County,* 168 F.3d 458, 461 (11th Cir.1999)). To overcome the presumption, the proposed intervenors must come forward with some evidence to the contrary. *Id.*; *Clark*, 168 F.3d at 461. If the proposed intervenors carry their burden, the Court will find adequate representation if (1) no collusion is shown between the representative party and opposing party; (2) the representative party does not have an interest adverse to the proposed intervenor; and (3) the representative does not fail in the fulfillment of its duty. *Id.*; *Clark*, 168 F.3d at 461.

The Licensed Charities claim that "[t]he interests of the Class B license holders are not adequately protected by the existing parties to the action." (Mot. ¶ 9.) The Court agrees with the Licensed Charities that the plaintiffs do not adequately represent their interests as those interests are diametrically opposed. However, the Licensed Charities' claim that Sheriff Warren does not

adequately represent their interests requires additional analysis. The Court assumes, only for the sake of argument, that the Licensed Charities' objectives are not the same as Sheriff Warren's objectives. Thus, the Court assumes without deciding that there is no presumption of adequate representation.

Nevertheless, the Court finds adequate representation. The Licensed Charities have not offered any proof evidencing collusion between Sheriff Warren and the plaintiffs or proof that Sheriff Warren has failed to fulfill his duty in defending this suit. Rather, the Licensed Charities argue that their interests and Sheriff Warren's interests are not identical; that is, "the Sheriff could choose to emphasize the effects that abrogation of the First and Second Amended Rules might have on Macon County instead of focusing on the effect that the abrogation of those rules could have on the Licensed Charities." (Mot. ¶ 10.) In defending his amended rules, Sheriff Warren may very well focus on the amended rules' effect on Macon County rather than on existing license holders. But, this does not evidence an interest adverse to the proposed intervenor. Both Sheriff Warren and the Licensed Charities seek to uphold the constitutionality of the amended rules. Furthermore, there is simply no proof that Sheriff Warren will not or cannot properly stage a defense due to "financial constraints" as suggested by the Licensed Charities. (Mot. ¶ 12.) Indeed, one glance at the docket sheet evidences that the Sheriff has thus far vigorously defended this suit. Thus, the Licensed Charities fail to establish inadequate representation.

### 4. Timeliness

The determination of whether a motion to intervene is timely is within the district court's discretion. *Maddow v. Procter & Gamble Co., Inc.*, 107 F.3d 846, 854 (11th Cir. 1997) (citing

*Stallworth v. Monsanto Co.,* 558 F.2d 257, 263 (5th Cir. 1977)[6]). "[T]imeliness is not limited to chronological considerations but is to be determined from all the circumstances." *Stallworth*, 558 F.2d at 263-64 (citations and internal quotation marks omitted). The timeliness inquiry involves consideration of four factors: (1) the length of time during which the proposed intervenor knew or reasonably should have known of their interest in the case before moving to intervene; (2) the extent of prejudice to the existing parties as a result of the proposed intervenors' failure to move for intervention as soon as they knew or reasonably should have known of their interest; (3) the extent of prejudice to the proposed intervenors if their motion is denied; and (4) the existence of unusual circumstances militating either for or against a determination that their motion was timely. *Chiles*, 865 F.2d at 1213. A more lenient standard of timeliness should be applied where the proposed intervenor qualifies for intervention of right rather than permissive intervention. *Stallworth*, 558 F.2d at 266.

A detailed analysis of the timeliness factors is unnecessary where, as here, the issue is not in dispute. The Court finds that the motion is timely. However, because the Licensed Charities do not meet Rule 24(a)'s other requisite criteria, the motion for intervention as a matter of right is denied.

**B.**     ***Permissive Intervention***

Permissive intervention may be allowed when a proposed intervenor's "claim or defense and the main action have a question of law or fact in common" and the motion to intervene is timely.[7]

---

[6] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

[7] Permissive intervention is also allowed where a federal statute grants a conditional right to intervene. Here, the proposed intervenors do not claim a statutory right.

Fed. R. Civ. P. 24(b). The Court has the discretion to deny permissive intervention even if both of those requirements are met. *Chiles*, 865 F.2d at 1213. "In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." Fed. R. Civ. P. 24(b).

The Licensed Charities seek to become defendant-intervenors and allege that their "claims and the claims of the main action have common questions of law and fact." (Mot. ¶ 13.) A review of the pleading accompanying the motion to intervene, which is required by Rule 24(c), reveals that the Licensed Charities' motion to dismiss is substantively similar to Sheriff Warren's motion to dismiss. This comes as no surprise as the Licensed Charities and Sheriff Warren have the same goal: to uphold the constitutionality of the amended rules. Because the Licensed Charities' arguments are the same as Sheriff Warren's arguments, one could conclude that there are questions of law or fact in common here.[8] However, the addition of the six Licensed Charities as parties to this suit would needlessly expand this litigation. The Court agrees with the plaintiffs that "[t]he duplicative nature of those assertions would unduly delay the adjudication of the rights of the parties in the law suit and make it unlikely that any new light will be shed on the issues to be adjudicated." (Pls.' Br. ¶ 21 (citing *Chiles*, 865 F.2d at 1215).) Furthermore, judicial resources would be taxed by resolving redundant motions and the largely inevitable discovery disputes when multiple parties are involved.

---

[8] On the other hand, one might conclude that the Licensed Charities have no dog in this fight and merely wish to litigate on behalf of Sheriff Warren. The Court has serious reservations about the Licensed Charities' standing to defend this suit. The parties do not address the issue in their briefing, and resolution of the issue is unnecessary here as the Court exercises its discretion to deny permissive intervention.

Accordingly, the Court finds that permissive intervention will unduly delay or prejudice the adjudication of the rights of the original parties.  As such, the Court exercises its discretion to deny the motion for permissive intervention.

## IV.  CONCLUSION

For the reasons set forth above, the Motion to Intervene (Doc. # 24) is DENIED.

DONE this the 12th day of October, 2006.

        /s/   W.  Keith Watkins
UNITED STATES DISTRICT JUDGE