IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| MACON COUNTY INVESTMENTS, INC., *et al.,* | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CASE NO. 3:06-CV-224-WKW |
| DAVID WARREN, | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This case is before the Court on Defendant Sheriff Warren's Motion to Dismiss First

Amended Complaint (Doc. # 26).  For the reasons given below, the motion will be DENIED.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

The Court must accept the plaintiffs' factual allegations in the pleadings as true.  Amendment

744 to the Alabama Constitution made the operation of bingo gaming by nonprofit organizations

legal in Macon County, Alabama.  Ala. Const. Amend. No. 744.  Nonprofit organizations may enter

into agreements with others to operate the bingo facility:

> (4)  A nonprofit organization may enter into a contract with any individual, firm, association, or corporation to have the individual or entity operate bingo games or concessions on behalf of the nonprofit organization. A nonprofit organization may pay consulting fees to any individual or entity for any services performed in relation to the operation or conduct of a bingo game.

> (5)  A nonprofit organization may lend its name or allow its identity to be used by another person or entity in the operating or advertising of a bingo game in which the nonprofit organization is not directly and solely operating the bingo game.

*Id.*  Reach One, Teach One of America, Inc. ("Reach One"), is a nonprofit, federal tax-exempt

organization incorporated under the laws of the State of Alabama and is doing business in Macon

County as a public service organization.  As allowed under Amendment 744, Reach One contracted

with Macon County Investments, Inc. ("Investments"), a real estate development company, to operate its proposed bingo facility.

The Sheriff is responsible for promulgating the "rules and regulations  for the licensing and operation of bingo games within the county." Ala. Const. Amend. No. 744.  The Sheriff of Macon County, Alabama ("Sheriff Warren"), promulgated "Rules and Regulations for the Licensing and Operation of Bingo Games in Macon County" in December 2003.  (Am. Compl. Ex. 1.)  Under the December 2003 rules, any non-profit organization could make an application for a Class B Bingo license so long as the location of the facility, including the land, building, and improvements, was valued at $5,000,000 or greater.  (*Id*.)  According to the Amended Complaint, the Sheriff has authorized one Class B Bingo facility, which is currently operating in Macon County.  (Am. Compl. ¶ 9.)  It is alleged that Sheriff Warren has issued fifty-nine Class B licenses in Macon County to the original and sole facility under the December 2003 rules.  (*Id*. ¶ 14.)

On June 2, 2004, Sheriff Warren promulgated the "First Amended and Restated Rules and Regulations for the Licensing and Operation of Bingo Games in Macon County, Alabama."  (Am. Compl. Ex. 2.)  Under the June 2004 rules, a qualified bingo location must have been valued at $15,000,000 or greater, and bingo operations would  not be authorized unless a minimum of fifteen non-profit organizations submit an application.  (*Id*.)  According to the allegations of the Amended Complaint, the Sheriff did not issue any Class B Bingo licenses nor did he authorize any facilities under the June 2004 rules.  (Am. Compl. ¶ 12.)

On January 1, 1005, Sheriff Warren promulgated the "Second Amended and Restated Rules and Regulations for the Licensing and Operation of Bingo Games in Macon County, Alabama."  (Am. Compl. Ex. 3.)  The January 2005 rules state that at no time shall there be more than sixty

Class B Licenses in Macon County, Alabama. (*Id*.). The plaintiffs allege that no additional Class B Bingo licenses were issued, and no facilities were authorized under the January 2005 rules. (Am. Compl. ¶ 14.)

On July 25, 2005, Reach One and Investments applied for a Class B Bingo license in Macon County. It is alleged that Sheriff Warren made verbal assurances that Reach One's application would be granted. Based on the verbal assurances, Investments purchased land for the facility, began its construction, and negotiated financing to purchase games for the operation of the facility. However, the license has not been issued.

On March 9, 2006, Reach One and Investments commenced this action alleging that Sheriff Warren denied the plaintiffs the right to operate a Class B Bingo facility in Macon County as allowed by Amendment 744 to the Alabama Constitution. Thus, the plaintiffs claim that Sheriff Warren denied them equal protection under the law in violation of the Fourteenth Amendment, for which the plaintiffs seek injunctive and declaratory relief.

By Order dated June 26, 2006, the Court denied in part and granted in part the defendant's motion to dismiss the complaint for lack of subject matter jurisdiction and failure to state a claim. The Court granted leave to the plaintiffs to amend the complaint for the purpose of making allegations to establish Investments' standing. Plaintiffs then filed an amended complaint on June 28, 2006. Sheriff Warren filed the instant motion to dismiss the amended complaint. The plaintiffs oppose the motion.

### III.  STANDARD OF REVIEW

Justiciability challenges are properly raised in a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. *See Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1242

(11th Circ. 2003)  Such motions to dismiss may attack jurisdiction either facially or factually.  *See Morrison v. Amway Corp.*, 323 F.3d 920, 924 n.5 (11th Cir. 2003).  Where, as here, the jurisdictional attack is based on the face of the pleadings, the court merely looks to determine whether the plaintiff has sufficiently alleged a basis of subject matter jurisdiction and must consider the allegations of the complaint to be true. *See Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990) (contrasting a facial attack with a factual attack, in which  no presumptive truthfulness attaches to plaintiff's allegations).

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint.  "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Day v. Taylor*, 400 F.3d 1272, 1275 (11th Cir. 2005).  The Court must accept all factual allegations as true and view them in a light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).  The threshold is "exceedingly low" for a complaint to survive a motion to dismiss for failure to state a claim. *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 703 (11th Cir. 1985).

## II.  DISCUSSION

In his motion to dismiss, the defendant argues four grounds for dismissal: (1) Investments does not have standing; (2) the complaint fails to state a claim upon which relief can be granted; (3) the claim is not ripe; and (4) the claim is moot.  Justiciability issues, particularly standing, are jurisdictional. *See Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1272

(11th Cir. 2003). This is because Article III of the United States Constitution[1] dictates that federal courts may only adjudicate actual cases or controversies. *See Allen v. Wright*, 468 U.S. 737, 750 (1984). Thus, the court will first determine the justiciability issues of standing, ripeness, and mootness before addressing the challenge to the merits of the claim.

**A.      *Investments Has Standing***

The requirement of standing is both a constitutional limitation on federal court jurisdiction and a prudential limitation on its exercise. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). In order to establish Article III standing, "[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright*, 468 U.S. 737, 751 (1984). Therefore, standing contains three elements: (1) the plaintiff must have suffered an injury in fact, which is an invasion of a legally-protected interest that is concrete and particularized and that is actual or imminent, not conjectural or hypothetical; (2) there must be a causal connection between the injury and the conduct complained of; the injury cannot be the result of the independent action of some third party not before the court; and (3) it must be likely that the injury will be redressed by a favorable decision. *Lujan*, 504 U.S. at 560-61.

---

[1] Article III provides, in relevant part:

The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority;--to all Cases affecting Ambassadors, other public Ministers and Consuls;--to all Cases of admiralty and maritime Jurisdiction;--to Controversies to which the United States shall be a Party;--to Controversies between two or more States;--between a State and Citizens of another State;--between Citizens of different States;--between Citizens of the same State claiming Lands under Grants of different States, and between a State, or the Citizens thereof, and foreign States, Citizens or Subjects.

U.S. Const. Art. III § 2, cl. 1.

In addition to these constitutional requirements, there are three prudential limits on standing. First, a plaintiff must generally assert its own legal rights or interests and not rest its claim on the legal rights or interests of another. *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 US 464, 474 (1982). Second, the courts will not hear generalized grievances. *Id.* at 475. Third, a plaintiff's complaint must fall within the zone of interests to be protected or regulated by the constitutional guarantee at issue. *Id.* Investments bears the burden of establishing the elements of standing.[2] *See Lujan*, 504 U.S. at 561.

Sheriff Warren explicitly challenges only Investments' standing and not the standing of Reach One to bring this action. Specifically, he asserts that "the face of the application [for a Class B bingo license] shows that only Plaintiff Reach One applied for a license" and argues that Investments is improperly resting its claim on Reach One's legal rights. (Def. Mot. 3.) Sheriff Warren also questions whether Investments has suffered an injury in fact. He reasons that "[n]either Amendment No. 744 nor the Macon County Bingo Rules provide for the licensing of a for profit organization, such as [Investments], to conduct bingo pursuant to a Class B bingo license." (*Id.* at 4.) Sheriff Warren further questions the element of redressability. He reasons that even if the court deemed the amendments to the rules unconstitutional, "Plaintiffs would still not be eligible for a

---

[2] The United States Supreme Court has elaborated on the plaintiff's burden:

[E]ach [standing] element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of litigation. At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we "presum[e] that general allegations embrace those specific facts that are necessary to support the claim."

*Lujan*, 504 U.S. at 561 (citations omitted).

Class B bingo license" because the application is incomplete.[3]  Although he questions whether Investments' has alleged injury in fact and redressability, the gist of Sheriff Warren's argument is that Investments cannot assert the rights of Reach One, the nonprofit organization affected by Amendment 744.

In response to Sheriff Warren's argument, Investments asserts that although Amendment 744 speaks to bingo licensing of non-profit organizations, the rules promulgated by Sheriff Warren and Reach One's application for a bingo license "effectively extend these rights" to Investments.  (Pl. Resp. 5.)  Pursuant to any version of Sheriff Warren's rules, Investments may operate the bingo games on Reach One's behalf or may act as surety or guarantor for the games.  (*Id.*)  Moreover, "Reach One, Teach One is listed on the application as the non-profit organization to hold the Class B Bingo License and [Investments] is listed on the application as an entity which will act as a surety for the games and [Investments'] officers are listed as a persons who will operate or promote bingo gaming."  (*Id.* at 6; *see* Am. Compl. ¶ 15.)  Investments further asserts that it and Reach One are suffering day-to-day monetary losses and that a favorable court ruling would eliminate the "bingo monopoly" that is occurring in Macon County by virtue of Sheriff Warren's amended rules.  (Pl. Resp. 6.)

At this stage in the litigation, the Court finds that Investments has carried its burden of establishing each element of standing.[4]  Taking the allegations of the amended complaint as true,

_____

[3]  Although the defendant challenges only Investments' standing, his last argument regarding redressability seems to include Reach One as well as Investments.  However, the defendant's purported redressability argument really is a challenge on the merits and to the ripeness of this action.

[4]  Because Sheriff Warren has made only a facial attack, rather than a factual attack, on Investments' standing, this holding does not foreclose the court from revisiting the standing issue after the facts have been further developed in this case.  Subject matter jurisdiction can be challenged at any stage of the proceedings.  *See* Fed.R.Civ.P. 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks

Investments has sufficiently alleged an injury in fact.  By virtue of its contract with Reach One and consequential submission of information to the application at issue, Investments has a legally protected interest at stake here.  Not only do the defendant's rules contemplate that nonprofit organizations will venture into bingo gaming with outside operators and sureties, but Amendment 744 also permits nonprofit organizations to contract with other entities for the operation of the bingo games under the nonprofit's bingo license.  The allegations of economic injury establish that Investments is actually, currently, and personally affected by Sheriff Warren's bingo rules and effective denial of Reach One's application for bingo licensing.  Investments' and Reach One's injury is one and the same.[5]

The case referenced in the defendant's notice of supplemental authority is inapposite.  *See Alkov v. City of Miami Beach*, No. 05-15696, 2006 WL 1428265 (11th Cir. May 24, 2006).[6]  The plaintiff in *Alkov* filed an equal protection claim against the City of Miami Beach for its rejection of certain applications submitted under the City's Nonprofit Vending Ordinance.  According to the district court, the ordinance at issue "permits nonprofit organizations to set up tables to distribute

---

jurisdiction of the subject matter, the court shall dismiss the action.")

[5] That Sheriff Warren does not also challenge Reach One's injury is indicative of the weakness in his challenge to Investments' standing.  Furthermore, assuming *arguendo* that the legal interest belonged solely to Reach One, Investments would be permitted to rest its claim on Reach One's legal rights.  Although a plaintiff is generally required to assert its own legal rights or interests and not rest its claim on the legal rights or interests of another, *Valley Forge Christian College*, 454 U.S. at 474, there are exceptions to this prudential limitation on third party standing.  Where the individual seeking standing is part of the third party's constitutionally protected activity, third party standing is permissible.  *See, e.g., Craig v. Boren*, 429 U.S. 190 (1976) (holding that bartender had standing to challenge law that permitted women to buy 3.2 percent beer at age eighteen but denied men that privilege until age twenty-one); *Singleton v. Wulff*, 428 U.S. 106 (1976) (holding that doctors had standing to challenge a state statute that prohibited the use of state Medicaid benefits to pay for their patients' nontherapeutic abortions); *Pierce v. Society of Sisters*, 268 U.S. 510 (1925) (holding that a parochial school had standing to challenge law requiring all children to attend public school).

[6] In *Alkov*, the Eleventh Circuit Court of Appeals affirmed the district court's dismissal of the plaintiff's amended complaint for lack of standing in a one-page unpublished opinion.

books, literature, and other message-bearing merchandise in five different locations in Miami Beach."[7]  When the requests for permits exceed the number of available locations, the ordinance provides for a quarterly lottery scheme.  The district court further explained that a nonprofit organization must provide proof of its tax-exempt status when it submits an application for a permit.

The plaintiff in *Alkov* alleged that he was a vendor or independent contractor who had submitted several permit applications on his own behalf and on behalf of several nonprofit organizations during the lottery scheme.  The plaintiff further alleged that the City rejected some of the applications that he submitted on behalf of religious nonprofit organizations.  Because his own applications were not rejected, the district court held that the plaintiff did not allege or suffer an injury in fact.  The court reasoned that any purported injury under the ordinance necessarily inured to the nonprofit organizations whose applications were rejected.  The court noted that the plaintiff did not allege "an interest in distributing books, literature, and message-bearing merchandise in furtherance of promoting his non-profit organization or that he intended personally to make use of the denied permits."  Because he was not affected by the rejection of the nonprofit organizations' applications, he did not have standing to assert their rights under the ordinance.

*Alkov* is distinguishable from the instant case.  First, the *Alkov* plaintiff's amended complaint did not include allegations that established an injury in fact.  Investments and Reach One, on the other hand, cleared that hurdle.  Amendment 744 and the rules promulgated thereunder allow nonprofit organizations to contract with or otherwise do business with other entities for the operation and surety of the games.  The Miami Beach ordinance at issue in *Alkov* did not have a similar

---

[7] *Alkov v. City of Miami Beach*, Case No. 1:05-cv-20304 (S.D. Fla. Sept. 9, 2005) (Doc. # 42, Order Granting Mot. to Dismiss).

provision that would have allowed that plaintiff to participate in the lottery scheme and tables. Second, the *Alkov* plaintiff made no showing that he was part of the religious organization's constitutionally protected activity, which could have formed the basis for third party standing. While Investments alleged an existing contract with Reach One and submitted relevant information about their venture in the application for the bingo license, the *Alkov* plaintiff did not allege an interest in or a contractual relationship with the religious organizations whose applications he submitted to the City of Miami Beach. Instead, he merely alleged that he was an "'independent contractor and/or vendor' filing permit applications *on behalf of* nonprofit organizations."[8]  Accordingly, the court is not persuaded by the holding in *Alkov*.

Sheriff Warren's challenge to redressability is not well taken. The defendant argues that the plaintiffs' application is incomplete and, thus, the plaintiffs are not eligible for a bingo license even in the event they receive a favorable ruling. At this stage in the litigation, the plaintiffs are not required to prove success on the merits. In light of Sheriff Warren's failure to either grant or deny the application and, according to the plaintiffs' argument, failure to notify the plaintiffs that their application is incomplete, the court finds that the plaintiffs have made allegations that are sufficient to establish redressability.

The court finds that Investments has standing to bring this action. Accordingly, the motion to dismiss with respect to standing will be denied.

**B.    *The Claim is Ripe***

Sheriff Warren asserts that the plaintiffs' claim is not ripe for review. While standing is concerned with who is a proper party to litigate a particular matter, ripeness is a determinant in when

---

[8] *Supra* note 7.

that litigation may occur.  "Ripeness is a justiciability doctrine designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements . . . .'"  *See National Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 807-08 (2003) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967)).  Ripeness focuses on whether a sufficiently concrete dispute has arisen.  *See Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 733 (1998).  In determining whether a case is ripe for adjudication, two considerations are paramount:  "the fitness of the issues for judicial decision" and "the hardship to the parties of withholding court consideration."  *National Park Hospitality Ass'n*, 538 U.S. at 808.

Sheriff Warren argues that the plaintiffs' alleged injury is remote and speculative as he has not yet denied the plaintiffs' request for a bingo permit:

> Although the Plaintiffs in the present matter allege that Sheriff Warren has not issued the requested bingo permit, he has not denied the permit either.  In fact, Plaintiffs allege that Sheriff Warren has indicated that the permit will be approved.  The Plaintiffs' claims, therefore, are nothing more than fears or speculation that the permit will be denied at some unspecified point in the future.  Such a contingent or remote injury, though, is insufficient to establish a ripe case or controversy under Article III.

(Def. Br. 10.)[9]  Taking the defendant's reasoning to its logical conclusion means that Sheriff Warren would never have to defend a constitutional challenge to his rules so long as he never takes action on the plaintiffs' application.  The ripeness jurisprudence does not require this result.

The plaintiffs, on the other hand, assert that their claim meets the fitness and hardship considerations.  The court finds that the claim is fit for review.  The court would not benefit from further factual development by the defendant in his administration of the bingo rules, *see Ohio*

---

[9]   Sheriff Warren's argument regarding ripeness is contained in his memorandum (Doc. # 9) in support of his original motion to dismiss, which he incorporated by reference in his memorandum (Doc. # 27) in support of his instant motion.

*Forestry*, 523 U.S. at 733, in that the plaintiffs' claim presents a "concrete factual situation" for the court to adjudicate. *Cf. California Bankers Ass'n v. Schultz*, 416 U.S. 21 (1974). Furthermore, by adjudicating the plaintiffs' claim now, the court would not inappropriately interfere with the Sheriff's administration of the bingo rules. *See Ohio Forestry*, 523 U.S. at 733.

The plaintiffs have also demonstrated they would suffer a substantial hardship should the court deny review of their claim until such time as Sheriff Warren takes action on their application. According to the amended complaint, the plaintiffs submitted their application on July 25, 2005. They filed this action on March 9, 2006. Sheriff Warren's failure to either grant or deny the application in seven months' time[10] and, according to the plaintiffs' argument, failure to notify the plaintiffs that their application is incomplete, amounts to an effective denial of their application. Furthermore, the court notes that under the December 2005 rules, it seems unlikely that the plaintiffs--or, frankly, any applicant--could meet the requirements for a Class B bingo license. Indeed, as alleged, the defendant has not issued any Class B bingo or facility licenses under either the June 2004 rules or the December 2005 rules.

This claim is ripe for adjudication. Accordingly, the defendant's motion to dismiss with respect to ripeness will be denied.

**C.    *The Claim is Not Moot***

Sheriff Warren also argues that the plaintiffs' claim is moot because the court is not capable of granting the plaintiffs the relief they seek. Like ripeness, mootness is a justiciability doctrine determining when review is appropriate. "[A] federal court has no authority 'to give opinions on

---

[10] As of the date of this opinion, over seventeen months since the date the plaintiffs submitted their application, the parties have not informed the court that any action has been taken on the application.

moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.'" *Church of Scientology of California v. United States*, 506 U.S. 9, 12 (1992) (citations omitted).  A case is moot if events subsequent to the filing of the case resolve the dispute.  *See, e.g., Arizonans for Official English v. Arizona*, 520 U.S. 43 (1997) (finding that state government employee's suit against the state, challenging state constitutional amendment declaring English to be official language of the state, became moot at the point employee resigned employment with the state); *U.S. Bancorp Mortg. Co. v. Bonner Mall Partnership*, 513 U.S. 18 (1994) (stating that the parties' settlement of the dispute results in mootness); *United States Dept. of Treasury v. Galioto*, 477 U.S. 556 (1986) (holding that an amendment to federal statute at issue rendered the case moot).

According to the defendant, the claim is moot as to Investments because Investments has not submitted an application for a Class B Bingo License and, as a for-profit organization, it is not eligible for the license.  The claim is moot as to Reach One, according to the defendant, because Reach One's application is incomplete under any version of the Rules.  Sheriff Warren made these same arguments under the guise of lack of injury in fact, redressability, and ripeness, and now professes mootness.  The claim is not moot as the dispute still exists, regardless of what label is employed.  Therefore, the motion to dismiss with respect to mootness will be denied.

**D.    *The Amended Complaint States a Claim***

Having addressed all of the defendant's challenges to jurisdiction, the court will now address the challenge to the merits of the claim.  Sheriff Warren argues that the amended complaint fails to state a claim for which relief can be granted.  Incorporating by reference his Rule 12(b)(6) argument contained in his original motion to dismiss, he asserts that the plaintiffs fail to demonstrate that the

13

amendments to the bingo rules are not rationally related to a legitimate government interest and fails

to demonstrate that his actions were triggered by a discriminatory motive or purpose.

By Order dated June 26, 2006, this court considered and ruled upon this same argument:

> In response, Sheriff Warren prematurely urges the Court to examine and accept his rationale for adoption of the amended rules. He would have the issue decided largely on the basis of unsupported news releases relating to the Alabama Attorney General's comments about gambling in this state. Not only is this information inadmissible in form, but it is unavailable as a basis upon which to grant a Rule 12(b)(6) motion to dismiss. When plaintiffs allege, as in this case, that they have been intentionally treated differently from others similarly situated, and that there is no rational basis for the difference in treatment, the threshold for pleading the equal protection violation is met. *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) ("[T]he purpose of the Equal Protection Clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents.").

> The Court finds that the arguments of Sheriff Warren go to the merits of the case and can only be appropriately addressed after discovery, either in a hearing for preliminary injunction or upon a properly supported motion for summary judgment.

Order (Doc. # 19) (footnote omitted). Because Sheriff Warren's instant motion does not present any

additional bases for Rule 12(b)(6) dismissal beyond what he argued in his original motion to dismiss,

the motion is due to be denied again.

## IV.  CONCLUSION

For the reasons set forth above, it is ORDERED that the Motion to Dismiss Amended

Complaint (Doc. # 26) is DENIED.

DONE this 17th day of January, 2007.

                    /s/  W.  Keith Watkins
                    UNITED STATES DISTRICT JUDGE