IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

MACON COUNTY INVESTMENTS,       )
INC., *et al.,*                 )
                                )
            Plaintiffs,         )
        v.                      )       CASE NO. 3:06-CV-224-WKW
                                )
DAVID WARREN,                   )
                                )
            Defendant.          )

## MEMORANDUM OPINION AND ORDER

This case is before the court on Motions for Summary Judgment filed by Defendant David Warren (Doc. # 59), which is due to be GRANTED, and filed by Plaintiffs Macon County Investment, Inc., and Reach One, Teach One of America, Inc. (Doc. # 61), which is due to be DENIED.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

In reciting the facts, the court construes the evidence in a light most favorable to the non-movants.  Amendment 744 to the Alabama Constitution made the operation of bingo gaming by nonprofit organizations legal in Macon County, Alabama.  Ala. Const. Amend. No. 744. Amendment 744 also authorized the sheriff of Macon County to "promulgate rules and regulations for the licensing and operation of bingo games within the county."  *Id.*

Defendant David Warren, the Sheriff of Macon County, Alabama ("Sheriff Warren"), promulgated "Rules and Regulations for the Licensing and Operation of Bingo Games in Macon County" in December 2003 ("original rules" or "2003 Rules").  Under the 2003 Rules, a nonprofit organization could not operate a bingo game unless it was licensed to do so.  (2003 Rules § 3.)  A

Class B Bingo license allows the license holder to operate all bingo games at a qualified location.[1] A qualified location for the holder of a Class B Bingo license is a location that has in place: public liability insurance; liquor liability insurance; adequate parking; onsite security; onsite first aid; adequate cash or security bond; certain accounting procedures, controls and security; evidence that the location was valued  at $5,000,000 or greater; evidence of ADA compliance; and  owners with Alabama residency.  (*Id*. § 1(j).)  A nonprofit organization may apply for a Class B Bingo license by submitting to the Sheriff the application forms, a $1,000 fee, and the following information:

(1)    The date of incorporation or other evidence of inception showing existence by the organization for the prescribed period of time.

(2)    A certified copy of the charter, certificate of incorporation, by-laws, or other evidence of legal existence of the organization.

(3)    When applicable, a copy of the letter ruling or tax exempt determination letter from the Internal Revenue Service or other proof deemed acceptable by the Sheriff verifying the tax exempt status of the organization named in the application or the parent organization of which the same is a qualified branch, chapter, lodge or post.

(4)    The names and residence addresses of each of the officers and directors of the organization, as well as the names and addresses of any members or persons who shall be in charge of or have control over the operation or promotion of bingo games.

(5)    The names and addresses of any persons, organizations, or other entities which shall act as sureties for the applicant or to which the applicant is financially indebted in regard to the operation of bingo games.

(6)    The exact physical location at which the applicant will conduct the bingo games and if the premises on which the games are to be conducted are not owned by the applicant, the names and addresses of the owners thereof and a copy of all rental, lease, consulting or other agreements with the said owners regarding the use of the premises for the operation of the bingo games.

---

[1] A Class A license allows the license holder to operate only paper bingo games at a qualified location. (2003 Rules § 1(g), (i).)

2

> (7)    A statement listing all convictions, if any, for criminal offenses, other than minor traffic offenses, of each of the persons for whom names are required in subsections (4), (5), and (6) above.

(*Id*. § 4(a), (c).)  The 2003 Rules require the Sheriff to refuse to grant a license until the information is provided in full and verified by the Sheriff within a reasonable time.  (*Id*. § 4(b).)  Sheriff Warren issued twenty-nine Class B Bingo licenses under the 2003 Rules.  (Warren Aff. ¶¶ 11-13.)  All of these license holders contracted with one qualified location, "Victoryland."[2]  (*Id*.)

Sheriff Warren promulgated the "First Amended and Restated Rules and Regulations for the Licensing and Operation of Bingo Games in Macon County, Alabama" in June 2004 ("First Amended Rules" or "2004 Rules").  Under the 2004 Rules, a qualified location for the holder of a Class B Bingo license must have been valued at $15,000,000 or greater.  (2004 Rules § 1(j).)  The 2004 Rules also amended section 2, which provided that "[n]o Class B Licensee shall be authorized to operate bingo at any qualified location, as defined herein, unless a minimum of fifteen (15) applicants shall first obtain Class B Licenses for such location."  (*Id*. § 2.)  Victoryland submitted sufficient evidence "that it met the increased capital investment requirement in the 2004 Rules and that it continued to meet all of the other requirements necessary to be designated as a qualified location." (Warren Aff. ¶ 16.)  Under the 2004 Rules, Sheriff Warren issued ten new Class B Bingo licenses to nonprofit organizations that contracted with Victoryland.  (*Id*. ¶ 17.)  In December 2004, he issued thirty-nine renewal Class B Bingo licenses.

Sheriff Warren promulgated the "Second Amended and Restated Rules and Regulations for the Licensing and Operation of Bingo Games in Macon County, Alabama" in January 2005 ("Second Amended Rules" or "2005 Rules").  The 2005 Rules state: "At no time shall there be issued and

---

[2]  Victoryland is also known as the Macon County Greyhound Park.

outstanding more than sixty Class B Licenses for the operation of bingo in Macon County.  (2005 Rules § 2.)  Sheriff Warren issued twenty Class B Bingo licenses under the 2005 Rules.  (Warren Aff. ¶ 22.)  All of the license holders contracted with Victoryland, which is the only location deemed to be a Class B Bingo qualified location.  (*Id*. ¶ 23).

Plaintiff Reach One, Teach One of America, Inc. ("Reach One"), is alleged to be a nonprofit, federal tax-exempt organization incorporated under the laws of the State of Alabama and doing business in Macon County as a public service organization.  (Am. Compl. ¶ 15.)  As allowed under Amendment 744, Reach One contracted with Plaintiff Macon County Investments, Inc. ("Investments"), a real estate development company, to operate its proposed bingo facility.  (*Id*.)  On July 25, 2005, Reach One applied for a Class B Bingo license in Macon County and designated Investments as its guarantor or qualified location.  (*Id*.; *see also* Doc. # 61, Ex.8.)  The application has neither been granted nor denied.  (Warren Aff. ¶ 25.)  Sheriff Warren asserts that the plaintiffs' application lacked, among other things, complete information regarding the officers and directors of Reach One, and there was insufficient evidence as to Reach One's corporate status as a bona fide nonprofit organization.  (*Id*. ¶¶ 24-25.)

On March 9, 2006, Reach One and Investments commenced this action alleging that Sheriff Warren denied the plaintiffs the right to operate a Class B Bingo facility in Macon County as allowed by Amendment 744 to the Alabama Constitution.  Thus, the plaintiffs claim that Sheriff Warren denied them equal protection under the law in violation of the Fourteenth Amendment, for which the plaintiffs seek injunctive and declaratory relief.  Preliminary motions were resolved, and the plaintiffs filed the Amended Complaint (Doc. # 20).  Sheriff Warren filed a motion to dismiss (Doc. # 26), in which he facially attacked the court's jurisdiction over this matter.  The motion was

4

denied because the allegations in the Amended Complaint were sufficient to establish the plaintiffs'

standing.  (*See* Doc. # 41.)  The parties' summary judgment motions are now before the court.

## II.  JURISDICTION AND VENUE

The Amended Complaint presents a federal question pursuant to 28 U.S.C. § 1331; however,

the court's jurisdiction is at issue on the basis of standing.  The court finds adequate allegations of

personal jurisdiction and venue.

## III.  STANDARD OF REVIEW

"Under Rule 56(c), summary judgment is proper 'if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter

of law.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).  The

party asking for summary judgment "always bears the initial responsibility of informing the district

court of the basis for its motion, and identifying those portions of 'the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it

believes demonstrate the absence of a genuine issue of material fact."  *Id*. at 323.  The movant can

meet this burden by presenting evidence showing there is no dispute of material fact, or by showing

the non-moving party has failed to present evidence in support of some element of its case on which

it bears the ultimate burden of proof.  *Id*. at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go

beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories,

and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"

*Id*. at 324.  To avoid summary judgment, the nonmoving party "must do more than simply show that

5

there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

## IV. DISCUSSION

The defendant makes four arguments in favor of summary judgment:  (1) the plaintiffs do not have standing because their claims are not redressable; (2) the plaintiffs do not have standing because the plaintiffs' claims are not ripe for failure to exhaust administrative remedies; (3) the plaintiffs cannot establish an equal protection claim because challenged regulations are rationally related to legitimate government interests; and (4) the plaintiffs cannot establish an equal protection claim because they cannot show that they have been treated differently than similarly situated persons.  The plaintiffs seek summary judgment on the basis that there is no genuine issue of material fact as to Sheriff Warren's equal protection violation.

Justiciability issues, particularly standing, are jurisdictional.  *See Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1272 (11th Cir. 2003).  This is because Article III of the United States Constitution[3] dictates that federal courts may only adjudicate actual cases or

---

[3] Article III provides, in relevant part:

The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority;--to all Cases affecting Ambassadors, other public Ministers and Consuls;--to all Cases of admiralty and maritime Jurisdiction;--to Controversies to which the United States shall be a Party;--to Controversies

controversies.  *See Allen v. Wright*, 468 U.S. 737, 750 (1984).  Because the plaintiffs do not have standing to bring this action, the court cannot reach the merits of the claim.

The requirement of standing is both a constitutional limitation on federal court jurisdiction and a prudential limitation on its exercise.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues."  *Warth v. Seldin*, 422 U.S. 490, 498 (1975).  In order to establish Article III standing, "[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief."  *Allen v. Wright*, 468 U.S. 737, 751 (1984).  Therefore, standing contains three elements:  (1) the plaintiff must have suffered an injury in fact, which is an invasion of a legally-protected interest that is concrete and particularized and that is actual or imminent, not conjectural or hypothetical; (2) there must be a causal connection between the injury and the conduct complained of; the injury cannot be the result of the independent action of some third party not before the court; and (3) it must be likely that the injury will be redressed by a favorable decision.  *Lujan*, 504 U.S. at 560-61.

The plaintiffs bear the burden of establishing the elements of standing "in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of litigation."  *Id.* at 561.  Thus, at the motion to dismiss stage, the court found that the plaintiffs' factual allegations in the Amended Complaint were

---

between two or more States;--between a State and Citizens of another State;--between Citizens of different States;--between Citizens of the same State claiming Lands under Grants of different States, and between a State, or the Citizens thereof, and foreign States, Citizens or Subjects.

U.S. Const. Art. III § 2, cl. 1.

sufficient to establish redressability.[4]  (Doc. # 44, at 10.)  At the summary judgment stage, however, "the plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true."  *Lujan*, 504 U.S. at 561 (internal quotation marks and citations omitted).

Sheriff Warren argues that the plaintiffs do not have standing because the court cannot redress their alleged injury.  According to Sheriff Warren, even if the court granted the relief sought, it  "would not result in the issuance of a Class B Bingo license as the application submitted to Sheriff Warren fails to meet other licensing requirements not challenged by Plaintiffs."  (Def.'s Mem. Br. Supp. Summ. J. 27.)  In response, the plaintiffs assert *only* that "the fact that [Investments] has not met the requirements set forth in the promulgated rules is evidence of the impossibility of the rules created by the Sheriff to ensure a monopoly in Macon County.  This impossibility of organizations, such as Reach One, Teach One and [Investments], to be able to meet the qualifications is the basis for the equal protection claim."  (Pls.' Resp. Opp'n Def.'s Summ. J. 2.)

Notwithstanding this response, in which it may appear that the plaintiffs challenge all of the bingo rules promulgated by Sheriff Warren, the plaintiffs in fact have challenged only the amended rules.  In the Amended Complaint, the plaintiffs allege that "[t]he First Amended Rules and the Second Amended Rules preclude applicants post June 2004 from obtaining a Class B Bingo license."  (Am. Compl. ¶ 21.)  The plaintiffs specifically challenge, as having no rational basis, amendments that "increas[e] the minimum number of applicants to establish a Class B Bingo facility from one non-profit organization to fifteen (15) non-profit organizations" and that "limit[ ] the amount of

---

[4]  The court cautioned that its holding at the motion to dismiss stage would not "foreclose the court from revisiting the standing issue after the facts have been further developed in this case."  (Doc. # 44, at 7 n.4.)

Class B licenses in Macon County to a maximum of sixty (60)." (*Id*. ¶¶ 22-23.)  In their demand for relief, the plaintiffs seek a declaratory judgment that "[Sheriff Warren's] actions twice amending the Original Rules" is an equal protection violation and that "the First and Second Amended Rules" are arbitrary and capricious.  The plaintiffs do not challenge any of the original rules, nor do they challenge the process by which the rules were created or the delegation of rulemaking authority from the Alabama Legislature to Sheriff Warren.

The evidence submitted by Sheriff Warren and uncontested by the plaintiffs shows that the plaintiffs do not qualify for a Class B Bingo operations or facility license even under the unchallenged original rules because their application was deficient.  Under § 4(a) of the original rules, a nonprofit organization may apply for a Class B Bingo license.  That organization must attach to its application "a certified copy of the charter, certificate of incorporation, by-laws, or other evidence of legal existence of the organization." (2003 Rules § 4(c)(2).)  Separate evidence of its tax exempt status is also required.  (*Id*. § 4(c)(3).)  Reach One applied for the license indicating Investments would be the guarantor; however, its application is deficient in that no evidence of Reach One's corporate existence and status was attached to the application as required by § 4(c)(2). While the application package contained a letter from the Internal Revenue Service indicating Reach One was an exempt organization based upon a January 1997 determination letter, this satisfied only the requirements of § 4(c)(3).  This letter is wholly insufficient to establish Reach One's corporate existence.  This deficiency is magnified by the refusal or inability of Reach One to produce any evidence of its minutes or other corporate records during discovery.[5]  Another deficiency is that the

---

[5]  Indeed, the testimony of Walter Walker ("Walker"), the founder and Executive Director of Reach One, calls into serious question whether Reach One is a bona fide nonprofit organization.  Reach One did not file tax returns for tax years 2000 through 2005.  (Walker Dep. 8-9, 15.)  Moreover, with one notable exception, Walker

plaintiffs failed to provide complete information regarding its officers and directors.[6]  (Warren Aff. ¶ 25; Walker Dep. 197:3-200:22.)

Therefore, even if the plaintiffs could succeed on the merits of the equal protection claim, the remedy sought would not redress their injury.[7]  That is, even if the declaratory judgment invalidated the amended rules, the plaintiffs still would not be entitled to a Class B Bingo license under the original rules.  Accordingly, the court finds that the plaintiffs have not satisfied the redressability requirement and, thus, do not have standing to bring this constitutional challenge.[8]  *See KH Outdoor, L.L.C. v. Clay County, Fla*., 482 F.3d 1299, 1304 (11th Cir. 2007).  Therefore, Sheriff Warren's summary judgment motion will be granted on standing grounds.  Because the plaintiffs

---

could give no meaningful evidence of Reach One pursuing its corporate purpose in 2004, 2005, and 2006.  (*Id*. 81-85.)  The exception was a $10,500 donation to Reach One from Frank Thomas, the president of Investments and the promoter of the bingo venture.  From a reading of Walker's deposition, it is anybody's guess as to what happened to this contribution.  (*See id*. 49-52, 82-85, 102-119.)  Reach One received "maybe seventy-five ($75) to a hundred and twenty-five ($125) dollars" in contributions, grants, and gifts in direct public support in 2005.  (*Id*. 145:11-16.)  As of the date of Walker's deposition, Reach One had no money in its bank account, no other assets, and no expenses since 2000.  (*Id*. 117, 130-31, 147-148.)  The defendant artfully delineated further evidence of Reach One's questionable status as a bona fide nonprofit organization.  (Def.'s Mem. Br. Supp. Summ. J. 20-23.)

[6]  Sheriff Warren also argues that the plaintiffs did not meet any of the "qualified location" requirements as defined in § 1(j) of the original rules.  Because the plaintiffs' application is otherwise fatally deficient, the court need not analyze the qualified location requirements.

[7]  This analysis assumes without deciding that the plaintiffs have an actual injury.  In the Amended Complaint, the plaintiffs alleged that Sheriff Warren made verbal assurances that Reach One's application would be granted.  They further alleged that, based on the verbal assurances, Investments purchased land for the facility, began its construction, and negotiated financing to purchase games for the operation of the facility.  The court relied in part on these allegations in determining at the motion to dismiss stage that the plaintiffs had standing: "The allegations of economic injury establish that Investments is actually, currently, and personally affected by Sheriff Warren's bingo rules and effective denial of Reach One's application for bingo licensing."  (Doc. # 41, at 8.)  In his summary judgment motion, however, the defendant points out that Investments' president, Frank Thomas, testified in his deposition that no equipment had ever actually been purchased, that construction on the facility had not begun, and that there were no assets or finances to construct the facility.  (Thomas Dep. 229, 233-34.)  Because there is no redressability, the court need not further analyze whether the plaintiffs indeed have a cognizable injury.

[8]  Furthermore, to the extent the plaintiffs argue they are asserting an equal protection claim on behalf of all nonprofit organizations against Sheriff Warren and his alleged "monopoly," this reformulation of the claim cannot stand.  A plaintiff with only a generalized grievance does not state an Article III case or controversy.  *Lujan*, 504 U.S. at 573-74.

have no standing, this court does not have jurisdiction over this action, cannot reach its merits, and the plaintiffs' summary judgment motion is thus due to be denied.

## V.  CONCLUSION

For the reasons set forth above, it is ORDERED that:

1.      The Motion for Summary Judgment (Doc. # 59) filed by the defendant is GRANTED;

2.      The Motion for Summary Judgment (Doc. # 61) filed by the plaintiffs is DENIED;

3.      This action is dismissed as this court does not have subject matter jurisdiction;

4.      All dates and deadlines, including the trial date, are CANCELLED; and

5.      An appropriate judgment will be entered.

DONE this 14th day of November, 2007.

        /s/   W.  Keith Watkins
UNITED STATES DISTRICT JUDGE

11